DAVID R. ZARO (BAR NO. 124334)
TED FATES (BAR NO. 227809)
TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        tfates@allenmatkins.com
        thsu@allenmatkins.com

Attorneys for Plaintiff
WILLIAM J. HOFFMAN, Receiver

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| WILLIAM J. HOFFMAN, Court-appointed permanent receiver for Nationwide Automated Systems, Inc., Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates,<br><br>    Plaintiff,<br><br>    v.<br><br>FRANCES McCAFFREY, an individual,<br><br>    Defendant. | Case No. 2:15-cv-7843<br><br>**COMPLAINT FOR FRAUDULENT TRANSFER AND UNJUST ENRICHMENT** |

835000.01/SD

Plaintiff William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), hereby brings the following Complaint against the above-captioned Defendant and alleges, on behalf of the Receivership Entities, as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. sections 1345 and 1367(a), and the doctrines of ancillary and supplemental jurisdiction, in that this action arises from a common nucleus of operative facts as, and is substantially related to the original claims in, the Securities and Exchange Commission ("Commission") enforcement action styled as *Securities and Exchange Commission v. National Automated Systems, Inc., et al.*, United States District Court, Central District of California, Case No. 14-CV-07249-SJO (FFMx) ("SEC Action").

2. This Court may exercise personal jurisdiction over the above-captioned Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(A).

3. Venue in the Central District of California is proper under 28 U.S.C. section 1391 because this action is an ancillary proceeding to the SEC Action and because the Receiver was appointed in this District pursuant to the Preliminary Injunction and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Requiring Accountings; and (4) Appointing a Receiver entered by this Court in the SEC Action on October 29, 2014 ("Preliminary Injunction").

## II. PARTIES

4. The Receiver is the duly appointed permanent receiver for the Receivership Entities, and was appointed permanent receiver for the Receivership Entities pursuant to the Preliminary Injunction. Among other things, the Preliminary Injunction calls for the Receiver to recover and marshal, for the benefit

of creditors of and investors in the Receivership Entities, any and all assets which were owned, leased, occupied, or otherwise controlled by the Receivership Entities or were otherwise purchased with assets of the Receivership Entities. The Receiver holds exclusive authority and control over the assets of the Receivership Entities, including over the causes of action alleged herein, over which this Court has ancillary and supplemental jurisdiction.

5. On information and belief, Frances McCaffrey ("Defendant") is a citizen and resident of the County of Los Angeles, California, and is a recipient of assets of the Receivership Entities as described further herein.

### III. FACTUAL ALLEGATIONS

#### A. The Purported Business of the Receivership Entities and the Commencement of the SEC Action

6. As alleged by the Commission in the SEC Action, NASI raised money from investors by selling them Automated Teller Machines ("ATMs"), leasing the ATMs back from investors, managing the ATMs for the investors, and paying the investors "rents" that were guaranteed to total at least 20% of the purchase price paid for the ATMs per year. The Receivership entities also paid referral fees to investors and other agents who recruited new investors to purchase ATMs.

7. In actuality, the Receivership Entities did not sell any ATMs to investors, but instead fabricated and sold fictitious ATMs with fabricated serial numbers and locations. The "rents" paid to investors who purchased fictitious ATMs, as well as referral fees paid to investors and agents, were paid from the amounts raised from other investors. Thus, NASI operated a classic Ponzi scheme.

8. On or about September 17, 2014, the Commission initiated the SEC Action against the Receivership Entities and their principals Joel Gillis and Edward Wishner, alleging violations of federal securities laws. The Commission petitioned for the Receiver's appointment, and on September 30, 2014 and October 29, 2014,

this Court entered orders appointing the Receiver, first on a temporary basis and then as permanent receiver for the Receivership Entities.

### B. The Receiver's Authority and Investigation Pursuant to His Appointment

9. Pursuant to the terms of his appointment, the Receiver is vested with exclusive authority and control over the assets of the Receivership Entities. Specifically, Article XII of the Preliminary Injunction vests the Receiver with the "full powers of an equity receiver, including, but not limited to . . . full power to institute, pursue, and prosecute all claims and causes of action . . ."

10. The Receiver's investigation to date supports and confirms the Commissions allegations in the SEC Action, including that NASI operated a Ponzi scheme, sold fictitious ATMs to investors and made rent and referral fee payments to investors from funds raised from other investors. Defendants Gillis and Wishner filed answers to the SEC's complaint in which they admit the facts supporting the SEC's Ponzi scheme allegations.

### C. Criminal Indictment and Guilty Pleas

11. On December 16, 2014, Gillis and Wishner were arrested and charged with mail fraud, wire fraud, conspiracy, and aiding and abetting. *United States v. Gillis et al.*, C.D. Cal. Case No. 14-CR-00712-SJO. Gillis and Wishner waived indictment, surrendered their passports, and were released on bail. On January 13, 2015 and January 21, 2015, respectively, Wishner and Gillis plead guilty to all four counts of the criminal information. In connection with Gillis' guilty plea, a statement of facts signed by Gillis that supports the guilty plea was filed by the government ("Statement of Facts"). As part of his guilty plea, Gillis stated under oath that the facts in the Statement of Facts were true. The Statement of Facts is attached hereto as Exhibit A.

12. The Statement of Facts is fully incorporated herein by reference. The facts stated therein are included in this complaint as though fully restated and alleged herein.

### D. The Fraudulent Transfers to Defendant From the Receivership Entities

13. Attached hereto as Exhibit B is a schedule of bank transfers from Defendant to NASI and from NASI to Defendant. As the schedule reflects, the net amount received by Defendant ("Profit Amount") is calculated by subtracting (a) transfers from NASI to Defendant ("Payments from NASI") from (b) transfers from Defendant to NASI ("Deposit Amount"). Defendant's Profit Amount is $1,419,861.50.[1]

14. Defendant had no business dealings with NASI apart from transactions relating to the purchase and leasing of fictitious ATMs and provided no services or other value to NASI other than amounts paid for the fictitious ATMs.

### COUNT I – FRAUDULENT TRANSFER

15. The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 14, inclusive, hereinabove set forth.

16. Over the course of its pre-receivership operations, NASI paid the Profit Amount to Defendant with the intent to hinder, delay, or defraud NASI's creditors. Such payments were made from the proceeds of the Ponzi scheme which were generated from investors in the scheme.

17. The Receivership Entities received nothing of value in exchange for the payments that comprise the Profit Amount.

18. At the time the payments comprising the Profit Amount were made to Defendant, NASI was engaged in or about to engage in business transactions for

---

[1] All transfers from Payments from NASI occurring (a) after Defendant received payments equal to the Deposit Amount, and (b) more than seven years prior to the date of filing this Complaint have been excluded from the calculation of the Profit Amount.

which its remaining assets were unreasonably small in relation to the business or transaction.

19. NASI was insolvent, or became insolvent shortly after the subject payments comprising the Profit Amount were made to Defendant.

20. NASI intended to incur, or believed or reasonably should have believed it would incur, debts beyond its ability to pay as they became due.

21. As a consequence, the full Profit Amount is an actual and constructively fraudulent transfer under California's Uniform Fraudulent Transfer Act ("CUFTA"), Cal. Civ. Code section 3439, *et seq.*, and is subject to immediate disgorgement to the Receiver.

## COUNT II – UNJUST ENRICHMENT

22. The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 21, inclusive, hereinabove set forth.

23. As described above, NASI paid the Profit Amount to Defendant in connection with the transactions relating to the purchase and leasing of fictitious ATMs. Such payments were made from the proceeds of a Ponzi scheme which were generated from investors in the scheme.

24. Defendant benefitted by way of receipt of the Profit Amount and it is unjust and inequitable for Defendant to retain this benefit at the expense of the Receivership Entities and/or the other defrauded investors and creditors of the receivership estate.

25. Defendant has no legitimate claim to the Profit Amount as it represents fictitious profits paid to Defendant in furtherance of NASI's fraudulent Ponzi scheme and in order to entice new investors and further perpetuate the scheme.

26. The Receivership Entities received no value or consideration in exchange for the Profit Amount.

27. Defendant has thus been unjustly enriched in the amount of the Profit Amount, which is subject to immediate disgorgement to the Receiver.

# **PRAYER FOR RELIEF**

WHEREFORE, the Receiver prays for judgment against the Defendant as follows:

**On Count I:**

(a) For judgment against Defendant avoiding the transfers from NASI to Defendant comprising the Profit Amount; and

(b) For an order deeming the Profit Amount paid to Defendant to be held in constructive trust for the benefit of the Receivership Entities; and

(c) For an order directing Defendant to immediately pay the Profit Amount, plus prejudgment interest and costs, to the Receiver; and

(d) For such other and further relief as the Court may deem proper.

**On Count II:**

(a) For judgment against Defendant in the amount of the Profit Amount, plus prejudgment interest and costs; and

(b) For an order deeming the Profit Amount paid to Defendant to be held in constructive trust for the benefit of the Receivership Entities; and

(c) For an order directing Defendant to immediately pay the Profit Amount, plus prejudgment interest and costs, to the Receiver; and

(d) For such other and further relief as the Court may deem proper.

Dated: October 6, 2015

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: /s/ Ted Fates
TED FATES
Attorneys for Plaintiff
WILLIAM J. HOFFMAN, Receiver